IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| **LARRY EKKER,**<br><br>        **Plaintiff,**<br><br>vs.<br><br>**NATIONAL PARK SERVICE a Federal Agency of the UNITED STATES OF AMERICA,**<br><br>        **Defendant.** | **FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER**<br><br>Case No.  2:06CV744 DAK |

This matter was heard by the court in a bench trial held on January 20-21, 2009. Plaintiff Larry Ekker ("Plaintiff" or "Mr. Ekker") was represented by John Edward Hansen and David S. Bridge.  Defendant National Park Service ("NPS"), a federal agency of the United States of America, was represented by Assistant United States Attorneys Jeffrey E. Nelson and Amy J. Oliver.

Mr. Ekker has sued the United States under the Federal Tort Claims Act ("FTCA").  He alleges that he suffered personal injuries due to the negligence of one or more employees of the United States.  The United States denies that any of its employees were negligent and alleges that Plaintiff's injuries were solely caused by his own negligence.  Based upon the testimony and evidence presented at trial, the court makes the following Findings of Fact and Conclusions of Law.

**FINDINGS OF FACT**

1.  Plaintiff was injured on September 9, 2004, while working on a project near Lake Powell, Utah, on behalf of his employer, the Utah Department of Transportation ("UDOT"). Employees of UDOT and the United States National Park Service ("NPS") were working together to relocate a ferry docking ramp.

2.  UDOT owns the ferry docking ramps on Lake Powell and bears the primary responsibility for maintaining the ramps. The ferry that operates on Lake Powell connects State Road 276 between the Bullfrog Marina on the northeast shore of Lake Powell and the Halls Crossing area on the southeast shore. The docking ramp at the Bullfrog Marina is in relatively shallow water, so it must be moved periodically due to fluctuation in the lake's water level. Because Lake Powell is located in the Glen Canyon National Recreation Area, NPS cooperates with UDOT in relocating the docking ramps and provides personnel and machinery as necessary to assist UDOT.

3.  The ramp is composed of two parts. The section that extends into the water (the "wedge" section) is buoyant and thus can be moved from place to place through the water. The section on land (the "ramp" section) is either hauled or dragged to the new docking site. On September 9, 2004, the ramp section had a number of metal "flaps" that facilitated the transition from the roadway onto the ramp. Each flap was made of steel plate and was approximately three feet long and two feet wide.

4.     UDOT and NPS personnel agreed to meet together to relocate the Bullfrog docking ramp on September 9, 2004.  Plaintiff was asked by the UDOT Highway Supervisor, Ron Eberling, to attempt to move the ramp section using a UDOT bulldozer. When Plaintiff attempted to do so, however, the ramp did not budge because the metal flaps on the end of the ramp had become deeply embedded in the mud.

5.     Mr. Eberling and Chris Thompson, an NPS Maintenance Supervisor, had previously discussed the possibility of detaching the flaps from the ramp prior to relocating the ramp to a new location.  On September 9, 2004, since the flaps had become buried in the mud, Mr. Eberling and Mr. Thompson decided to dig out the buried flaps and then detach them from the ramp.

6.     Billy Kelley, an NPS employee with experience operating heavy equipment, was asked to attempt to dig out the flaps using an NPS backhoe. Mr. Kelley did so with the "bucket" portion of the backhoe, which is attached to a long, articulating arm.  Mr. Kelley used the bucket to dig each flap out of the mud using vertical force.  Mr. Kelley then applied horizontal force to the flap to snap it off of its point of attachment to the ramp.

7.     After Mr. Kelley snapped off each flap, he would move the bucket to the side and one of the workers would drag the detached flap out of the way.  Howard Phelps, an NPS employee, dragged the first few detached flaps to the side of the ramp.  Mr. Eberling and Plaintiff then moved one or two flaps out of the way.   The bucket was

always moved to the side when an individual approached to drag a detached flap out of the way.

8.     Mr. Kelley then dug out a flap that had become stuck to a second flap, so that the two flaps rose from the mud together. Plaintiff was standing on the ramp with Mr. Eberling and Mr. Thompson, about ten feet from the point where the flaps attached to the ramp. While Mr. Kelley was applying horizontal force to the pair of flaps that had risen together, Plaintiff suddenly stepped toward the backhoe and grabbed one of the flaps. As he did so, the backhoe bucket slipped from the flap and swung toward Plaintiff, knocking him to the surface of the ramp. The other workers immediately came to Plaintiff's aid and called for medical assistance.

9.     Plaintiff did not notify anyone that he intended to approach the backhoe and grab the flap, and he made no effort to communicate his intention to Mr. Kelley.

10.    Mr. Kelley exercised reasonable care in operating the backhoe. Mr. Kelley did not have notice of Plaintiff's intention to grab the metal flap and did not have sufficient time to react to Plaintiff's sudden movement toward the backhoe and his pull on the flap.

11.    All of the federal employees who were involved in moving the docking ramp on September 9, 2004, exercised reasonable care in discharging their duties.

12.    Plaintiff failed to exercise reasonable care when he suddenly moved toward the backhoe and grabbed the metal flap without communicating his intention to Mr.

Kelley.

13.     Plaintiff's injuries were solely caused by his grabbing of the metal flap, which allowed the backhoe bucket to slip off the flap and strike Plaintiff.

14.     By finding that Plaintiff caused his own injuries, the court in no way intends to minimize the significant physical and psychological injuries that Plaintiff has incurred as a result of this accident.  It is clear from all the testimony given during the bench trial that Mr. Ekker has been a hard-working, conscientious, and well-respected worker during the course of his long career.  Indeed, even on the day of this accident, it is apparent that Plaintiff was merely attempting to be helpful when he suffered his injuries.

## CONCLUSIONS OF LAW

1.      Under the FTCA, the government is liable "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674 and "in accordance with the law of the place where the act . . . occurred." 28 U.S.C. § 1346(b)(1). Thus, the court looks "to state law to resolve questions of substantive liability." *Miller v. United States*, 463 F.3d 1122 (10th Cir. 2006).

2.      Plaintiff has failed to prove by a preponderance of the evidence that any employee of the United States was negligent.

3.      Plaintiff was negligent in suddenly moving toward the NPS backhoe and grabbing the metal flap and in failing to communicate his intentions to the operator of the backhoe.

4.   Plaintiff's injuries were solely caused by his grabbing of the metal flap, which caused the backhoe bucket to slip off the metal flap and strike Plaintiff.

5.   Even if the court were to apportion some fault to NPS and/or Plaintiff's immune employer, UDOT, in no event could the combined fault of NPS and UDOT exceed 50%, and thus, Plaintiff would not be entitled to recover in any event.[1]

5.   Plaintiff is not entitled to recover any damages from the United States.

## ORDER

Accordingly, for the foregoing reasons, Plaintiff's Complaint is DISMISSED with prejudice.  The Clerk of the Court is directed to enter Judgment in favor of the National Park Service.  Each party is to bear his/its own costs.

DATED this 18th day of February, 2009.

BY THE COURT:

DALE A. KIMBALL
United States District Judge

---

[1] In his Proposed Findings and Conclusions (docket # 30)–and in his Trial Brief (docket # 29)–Plaintiff suggests apportioning fault equally between the three entities – 33⅓ % to Plaintiff, NPS, and UDOT.  Because the percentage of fault of UDOT, Plaintiff's immune employer, is less than 40%, UDOT's proportion of fault would be reapportioned equally to the non-immune parties.  Thus, after the reallocation of UDOT's fault, NPS and Plaintiff would each be allocated 50% of the fault. *See Utah Code Ann* § 78B-5-819(2)(a).  Plaintiff, however, would not be entitled to recover damages unless his percentage of fault *exceeded* 50%, which would not be the case–even if the court found that all three entities were equally at fault. *See Utah Code Ann.* § 78B-5-818(2).